# CHARLESTON.

GAINES *v.* KEENER *et al.*

Decided April 14, 1900.

1. DEED—*Delivery Of.*
    To constitute a delivery of a deed, the grantor must by act or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed. (p. 58).

2. ACT OR WORD—*Necessary to Delivery*
    Where a deed was executed and acknowledged ready for delivery, but was not delivered by anything then said or done, was laid away in decedent's chest, among his private papers, although the grantees in said deed may have carried the keys and had access to said chest, some act or word indicating the grantor's intention to deliver said deed to them was necessary to constitute a delivery of the same, and make it effectual as a conveyance of the property therein described to the grantees. (p. 60).

Appeal from Circuit Court, Taylor County.

Bill by Margaret Gaines against Barbara Keener and others. Judgment for plaintiff, and defendant George J. Keener appeals.

*Reversed.*

W. R. D. DENT, for appellant.

NIGH & GUARD, for appellee.

ENGLISH, JUDGE:

Samuel B. Keener owned a tract of land containing one hundred and sixty acres, in Taylor County, and in October, 1875, he divided the same into four parts, prepared and executed deeds to his four children, conveying to each a portion thereof, which deeds he retained in his possession, in a chest, among his private papers. During his lifetime said Keener disposed of all of said tract except thirty-eight and three-fourths acres described in the deed executed in 1875 to William and Elizabeth Keener. On this tract said Samuel B. Keener continued to reside until his

death, and while living there, on August 20,, 1894, he executed
and delivered a deed for said thirty-eight and three-fourths acre
tract to George I. Keener. The said Elizabeth Keener departed
this life, leaving her husband, William, and four daughters, sur-
viving her. After her death said William married the defendant
Barbara S. Keener, who still survives him as his widow. Mar-
garet Gaines, one of the daughters of William Keener, having
acquired deeds to the undivided interests of the heirs at law of
said William Keener to three-fourths of said tract of land,
brought this suit in equity in the circuit court of Taylor County,
praying for a sale of the land, and that the dower interest of
the widow of said William Keener be ascertained in his moiety
of said land, and that the residue of the money arising from the
sale of said land, after deducting costs of suit and expenses of
sale, might be divided among the joint owners of said tract as
their interests should appear. The sole question raised by the
pleadings in this case is whether the deed trom Samuel B.
Keener to his son William and his wife was delivered to said
grantees in his lifetime. The bill alleges that on the 11th of
October, 1875, the defendant Samuel B. Keener sold and con-
veyed, by a proper deed of conveyance, to William Keener and
Elizabeth Keener, his wife, said tract of land, which deed was
properly acknowledged and delivered to the grantors (meaning
the grantees), and they moved into and took possession of said
tract, and remained in full and undisturbed possession of the
same until the death of each of them. Samuel B. Keener filed
his answer to this bill, in which he denied the allegation that he,
on October 11, 1875, sold and conveyed by a proper deed of con-
veyance to William Keener and Elizabeth Keener, his wife, said
tract of thirty-eight and three-fourths acres of land, but says
that he permitted his son William to occupy said land in con-
junction with himself, and intended giving to this son and his
wife (both now dead) said land at his death, and in pursuance
of such intention prepared a deed for said land, conveying it to
William and Elizabeth, retaining the deed in his possession, and
it was not to be delivered until his death; that it was never
delivered to said William and Elizabeth, or either of them, and
had always remained in the possession of defendant except that
some time in the year 1894 Hiram Gaines, the husband of plain-
tiff, came to defendant, and procured said deed for the purpose,
as said Gaines alleged, to having the same examined by a lawyer

at Kingwood, who shortly afterwards returned it to defendant, and he still had it. Said Samuel Keener also alleges that Hiram Gaines, after obtaining possession of said deed by false representations, made or procured to be made a copy of the same, which he presented to the clerk of the county court of Taylor County, falsely and fraudulently representing it to be the true and genuine deed, and had the same admitted to record. Said respondent also alleges that Hiram Gaines, at the time of procuring said deed, purchased from the children of William Keener their interest in said land for a nominal sum, and procured the deeds to be made to his wife; and, being incensed at this fraudulent conduct, Samuel Keener conveyed said land, as he had a perfect right to do, to his son George Keener, who had always been a dutiful son.

Was this deed ever delivered by Samuel Keener to his son William Keener, or to said Elizabeth Keener? The plaintiff relies on the testimony of John W. Keener, who states that William and his wife proposed to sell him the land in question; that he said to him, "You cannot make me a good deed," and he replied: "I can. I will show you after dinner." "Then," said John, "he brought the deed to me in the woods on his piece of land, and we read it, and it was a clear deed from Samuel B. Keener and his wife to William H. Keener and his wife. The deed was made several years back of that time. The best of my recollection is that I saw the deed about 1887 or 1888." Now, it may be regarded as somewhat remarkable that parties who wished to examine papers should take them out in the woods for examination. We would rather expect them to go to the house where the papers were kept. It is true that Delvin on Deeds (volume 1, s. 294) says, "The possession of a deed, duly executed, in the hands of a grantee, is *prima facie,* but not conclusive, evidence of its delivery;" yet the same author, in section 295, says: "It may be shown by parol evidence that a deed in the possession of the grantee was not delivered. The principle that parol evidence is not admissible to contradict a deed has no application to a case of this kind." The presumption that this deed had been delivered to William H. Keener at the time he exhibited it to John W. Keener is overthrown by several facts shown in the testimony. First, It must be remembered that John W. Keener speaks of seeing the deed in 1887 or 1888, while Aaron Kearns states that in 1891 William Keener told him his father had made a deed to

him for the land, and, when asked, "What, if anything, did he say about where the deed was?" replied: "He didn't say. He said the old man had the deed, and never had exposed the deed." Again, when Hiram Gaines, in 1894, borrowed this deed from Samuel B. Keener, ostensibly to show it to a lawyer in Kingwood, but in reality to have it placed on record, Samuel B. Keener was then in possession of it, and loaned it to Gaines, who had it placed on record, and, when asked about its being recorded, denied it, and said it was not possible. Samuel Keener was also asked, "I want to know what you did with William's deed the day you acknowledged it." He replied, "I suppose I know I put it back in the chest where I put the balance of my deeds and papers." He said he had had possession of that deed ever since, until it was obtained by Gaines, and added: "It is true they had the keys of the chest,—William's wife and them,—because I did not use it much. They had possession of all my papers, but then it was still there when I hunted for it." George I. Keener, in his deposition, states that when Gaines borrowed the deed he got it out of the chest for his father. When we consider the fact that this old man, eighty-five years of age, kept his private papers in a chest to which William and his wife had access, what weight or importance can be attributed to the fact that William was able to show this deed to John W. Keener in the woods, and return it to the chest, where it was found after the death of William Keener, when Hiram Gaines, by misrepresentation, obtained possession of it, and had it placed on record? It may have been the intention of Samuel Keener at some future time to deliver this deed to William or his wife, but there is no proof in the case of such delivery. On the contrary, after William and his wife were both dead, the proof shows that said deed was still in Samuel Keener's possession. It had been placed on record, it is true, but not by his consent and direction, as is clearly shown by the conduct of Gaines when asked about its recordation, denying that he knew anything about it, and claiming it could not be so, and admitting, when giving his testimony, that he sent the deed by Fred Burdett to the clerk of the county court to be recorded. Barbara, the second wife of William Keener, testifies that she had this deed in her possession as much as four years before the death of her husband, which occurred December 28, 1893; but this statement is contradicted by Aaron Kearns, a disinterested witness, who says that William Keener told him in 1891 that the old

man had the deed, and never had exposed it. She also states that Samuel Keener gave her the deed, and that was how she first got it. But he surely did not deliver it to her as his deed, for she was not the grantee. She also says he afterwards demanded it of her, and threatened to sue her if she did not give it to him, and in the same breath she says he promised to give it back to her at any time she called for it, and afterwards refused to give it to her. This testimony, however, is incompetent, for the reason that Samuel Keener was dead at the time it was offered. See *Zane* v. *Fink,* 18 W. Va. 695. The kind of possession shown by the testimony of Samuel Keener would create no presumption of delivery, even if said Barbara Keener had been the grantee in the deed. A deed that has been surreptitiously and fraudulently obtained from the grantor without his knowledge or consent does not even, as against a subsequent purchaser without notice, transfer title. 1 Devl. Deeds. s. 267. In the case of *Brown* v. *Brown,* 66 Me. 316, the court held that: "To constitute a delivery of a deed the grantor must by act, or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed." Virgin J., speaking for the court, said: "It is elementary law that the delivery of a deed is as indispensable as the seal or signature of the grantor. Without this act on the part of the grantor, by which he makes known his final determination to consummate the conveyance, all the preceding formalities are impotent to impart vitality to it as a solemn instrument of title." On this point, in *Lang* v. *Smith,* 37 W. Va. 725, (17 S. E. 213), this Court said: "Where a deed was executed and acknowledged, but was not delivered by anything then said or done, but was laid away in the decedent's drawer, where he kept his papers, together with his will, executed at the same time, and after the grantor's death the supposed deed and will are found in his drawer, held, such paper writing is not his deed, never having been delivered." Now, there can be no question but that Samuel B. Keener, at the time he executed the four deeds mentioned in the record, intended to divide his property in that manner among his children; but his circumstances changed, and he was compelled to dispose of a portion of his lands, so that he was prevented from carrying out his original intention, and, notwithstanding the ineffectual attempts to acquire title to this thirty-eight and three-fourths acre tract of land by obtaining possession of the deed, and placing it on record,

by means of misrepresentations, the testimony discloses nothing that could in any manner be construed into a delivery of this deed to the grantees in their lifetime, or to any one entitled to receive the same since their death. I therefore conclude that the plaintiff was not entitled to the relief prayed for in her bill, and for the reasons herein given the decree complained of is reversed, and the bill dismissed.

*Reversed.*