# CHARLESTON

JACKSON *v.* COOK *et als.*

Submitted February 6, 1912.  Decided October 29, 1912.

1. EJECTMENT—*Suit by Equitable Owner—Bill.*

   A bill by the equitable owner to get in the legal title to land, which describes the land generally, and particularly by reference to some of the title deeds exhibited and filed therewith, is not bad on general demurrer because the immediate deed described and referred to in the bill by reference to the date, deed book and page where recorded, and offered to be filed if required, is not in fact filed.  (p. 212).

2. SAME—*Legal Title—Bill to Recover—Possession.*

   Nor· is such a bill, as would be a bill to quiet title, bad on demurrer for failing to allege that the plaintiff is in possession.  (p. 212).

3. WITNESSES—*Transaction or Communication with Person Since Deceased.*

   Section 23, chapter 130, Code 1906, does not render incompetent the evidence of a party or other witness as to a personal transaction or communication had with a deceased person, where that evidence is in favor of and not against the persons protected by the statute.  (p. 214).

4. QUIETING TITLE—*Bill—Possession.*

   A bill to quiet title to or remove cloud from real estate, which fails to allege possession by plaintiff, is bad on demurrer.  (p. 214).

5. WITNESSES—*Competency—Transaction or Communication with Person Since Deceased.*

   The testimony of defendant and of her other witnesses relating to personal transactions and communications had with her deceased husband, and given against his heirs, and in

support of the allegation of her cross-answer, as constituting
a claim for affirmative relief, being incompetent by section
23, chapter 130, Code 1906, and without which the evidence
is insufficient, the cross-relief prayed for should be denied for
want of competent evidence to support the facts alleged as
grounds for relief.   (p. 215).

Appeal from Circuit Court, Wyoming County.

Action by Thomas Jackson against R. Wade Cook and others.
Judgment for defendants, and plaintiff appeals.

*Reversed and Remanded.*

*Scott & Burnett* and *Jas. H. Gilmore,* for appellant.

*Howard & Worrell,* for appellees.

MILLER, JUDGE:

The land involved is a tract of about thirty-three acres in
Wyoming County.   The rights of the parties thereto, to be
adjudicated on this appeal by plaintiff, are presented by the
original bill, and the answer and cross-answer of Martha J.
Belcher thereto.

The plaintiff claims to be owner by purchase and deed of the
equitable title to the undivided interests of the heirs of Joseph
Belcher, deceased, by his first wife, in said land.   He alleges
that from April 7, 1893, to September 19, 1903, the legal title
to this land was vested in defendant R. Wade Cook, as trustee
for Joseph Belcher; and that Joseph Belcher died seized and
possessed of the equitable title thereto, September 2, 1903; that
on September 19, 1903, by her procurement, the legal title was
wrongfully and without authority of law or of the said Joseph
Belcher or his heirs, conveyed by said Cook, trustee, to the
defendant, Martha J. Belcher, widow.   It is further alleged,
in substance, that when Joseph Belcher bargained for and pur-
chased the land from Daniel L. Perdew, about the year 1889,
the legal title thereto was then outstanding in the Little Ka-
nawha Lumber Company; that in the year 1893, by direction
of Joseph Belcher, and payment by him of the balance of the
purchase money due Perdew, and with the latter's consent, the
legal title was conveyed by the Lumber Company to Cook, in
trust, and as security to Cook for money borrowed by Belcher

to pay Perdew. It is also alleged that Belcher, before his death, had discharged the loan from Cook, trustee, and was then entitled to a deed according to the terms of the trust, and that plaintiff as grantee of the heirs of Belcher by his first wife was entitled to a deed from the defendant, Martha J. Belcher, as trustee holding the legal title, for their interest in said land, subject to her dower therein, and such was the plaintiff's prayer for relief.

The defendants, R. Wade Cook and wife, and J. E. Belcher and wife, immediate grantors of plaintiff, answered admitting the allegations of the bill. The defendant Martha J. Belcher demurred and answered, and in her answer also set up alleged grounds for affirmative relief, and upon which she prayed that the claim and deeds of the plaintiff be removed as clouds upon her title.

To this answer and cross-answer plaintiff demurred and answered, and replied specially to the affirmative matter, denying therein the material facts alleged by respondent as constituting her claim for affirmative relief against him. ·

The decree appealed from denied plaintiff relief, and, upon the cross-answer of Martha J. Belcher, cancelled, recinded, annulled and set aside as clouds upon her title the deeds of the plaintiff from the heirs of Joseph Belcher.

Defendants' demurrer to the bill was overruled, and the first question presented is, Is the bill good on demurrer? The demurrer was a general one, assigning no grounds, except that it was not good in law. The argument here on behalf of the demurrant is, first, that a bill to quiet title must contain a correct description of the land in controversy. But the bill is not a bill to quiet title but to get in the outstanding legal title. Of course such a bill ought to identify the land by description or with reference to exhibits. This bill does that. One of the exhibits actually filed—the deed from the Little Kanawha Lumber Company to Cook—does contain a correct description of the land. The mediate and immediate deeds to the plaintiff are proffered as exhibits, and though not actually filed, are offered to be filed on request of any party in interest. If material to the defense they could have been called for on demurrer and no doubt they would have been filed. Their absence, without re-

quest for production, where the land was sufficiently described in the exhibit filed, would not render the bill bad on demurrer.

Another ground of demurrer, on the theory of a bill to quiet title, is that there is no allegation of possession by the plaintiff. But as we have said the bill is not one to quiet title but to get in the legal title alleged to be outstanding in the defendant Martha J. Belcher. The demurrer we think was properly overruled.

But is the case made by the bill admitted or established by legal and competent evidence? The answer of the defendant puts in issue the material facts alleged, which depend on oral testimony, and she has attempted to put in issue also the facts alleged respecting plaintiff's title, acquired, or alleged to have been acquired, by deeds from the heirs of Joseph Belcher.

The first question is, Does the proof sustain the allegation of the bill that the plaintiff has equitable title by deed from these heirs? The answer of Mrs. Belcher denies that the heirs of Joseph Belcher, deceased, conveyed to J. E. Belcher, who and whose wife are alleged to have conveyed to plaintiff, but she makes an admission that the children of Joseph Belcher, by his first wife, executed a quit claim deed to plaintiff, attempting to convey certain land, but which she alleges is so vaguely described in the deed, that she is unable to determine therefrom, whether or not, it is the thirty-three acres of land, the title to which was formerly held by R. Wade Cook, and she calls for strict proof thereof and of all material matters in connection therewith. She does not specifically deny the fact alleged, that J. E. Belcher and wife, by quit claim deed, conveyed the land to the plaintiff. Literally speaking, it is not true, as the allegation of the bill might imply, that *all* the heirs of Joseph Belcher conveyed the land to J. E. Belcher. Lack of attention in drafting the bill to the literal fact, makes the bill say that the heirs of Joseph Belcher, implying all of them, conveyed to J. E. Belcher. The answer of the defendant admits a fact not alleged, that the heirs of the first wife conveyed to the plaintiff. This admission shows lack of attention to the literal fact. The literal fact alleged and established by the proof, is, that the heirs by the first wife did not convey directly to plaintiff, but some of them conveyed directly to J. E. Belcher,

and he and his wife conveyed directly to plaintiff. The admission of the answer is a substantial admission of the existence of these deeds, but not an admission of the fact denied, that the description of the land is sufficient to put the equitable title of these heirs in plaintiff.

It would appear from the evidence that the original deed from these heirs, by the first wife, to J. E. Belcher, of January 1, 1909, was perhaps indefinite in description, but a subsequent deed of correction between the same parties, of January 16, 1909, made and recorded before suit brought or answers filed, and exhibited with the deposition of the clerk of the county court, taken on behalf of the plaintiff, contains a correct description of the land, and the land described is proven by witnesses to be the land in controversy. So that, we think, equitable title in the plaintiff for the interest of those heirs in the land in controversy is substantially established by the evidence, oral and documentary, in connection with admissions in the answers.

But what about the other allegations of the bill, denied by the answer, and sought to be established by the oral evidence? Without going into detail, which is unnecessary, the evidence of the witnesses, R. Wade Cook, John Ball, agent for the Little Kanawha Lumber Company, which conveyed the land to Cook in trust, Levi Hash, surveyor, T. G. Walker, and A. M. Stewart, County Clerk, taken in connection with the competent testimony of the witnesses for the defendant, fully establishes the material facts alleged, showing equitable title in Joseph Belcher, to the land sued for.

But it was objected, that in so far as the testimony of these witnesses relate to personal transactions and communications had with the deceased, it was incompetent, under section 23, chapter 130, Code 1906. But we do not think so. These witnesses, though some of them were parties to the suit, and their testimony did relate to such personal transactions and communications, yet their evidence was not given against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of the decedent. Their evidence was given in favor of these heirs—all his heirs—including his heirs by his second wife, defendant, Martha J. Belcher. This section

of the statute does not render that testimony incompetent. Under that statute the evidence is competent, for though a party, a witness is not incompetent to give such evidence, if it is in favor and not against the persons protected by the statute.

But is the case thus made by the bill and the evidence on behalf of the plaintiff overborne by the denials in the answer, and the evidence on behalf of defendant, Martha J. Belcher, and has she made out a case on her cross-answer, entitling her to the affirmative relief decreed her? We do not think so.

Defendant's cross-answer was demurred to, and overruling of that demurrer is assigned as error by the plaintiff. That part of defendant's answer was strictly a bill to remove cloud and quiet title. The point of demurrer is, that it fails to allege possession in Martha J. Belcher at the time of the suit, or the filing of her answer, and that the rule which she sought to apply to the plaintiff's bill, on the theory of a bill to remove cloud and quiet title, ought to be applied to her cross-answer. The only allegation in this answer relating to possession is that defendant and her husband, Joseph Belcher, and her son, G. B. Laxton, "lived on said land some ten years or more, the title being in said R. Wade Cook all of said time." So it is not alleged that she was then in possession. Plaintiff's special replication, which puts in issue all of the material allegations of the answer constituting claim for affirmative relief, though not specifically denying this allegation of the answer relating to possession, yet containing a general denial of all allegations not specifically denied or admitted to be true. The rule invoked by defendant against the plaintiff, is that allegation of actual possession by plaintiff and proof thereof, when denied, are essential to jurisdiction in equity to remove cloud on title. But this question is hardly material. We can dispose of the case on the defensive matter of the answer, including the allegation made the basis for affirmative relief, some, if not all, of which are defensive in their nature.

Martha J. Belcher's answer concedes that the legal title to the land was in defendant Cook, as trustee; but her claim is that she and not her husband, Joseph Belcher, was the purchaser of the land from Perdew. She denies that her husband paid the cash payment, or that he made the final payment. In the

:affirmative part of her answer, however, she admits that the balance of purchase money was discharged to Cook by labor performed by him and her son, G. B. Laxton, in building a house for Cook, under a contract with the husband. But her pretention is that the labor on this house by the son, which she alleges amounted to thirty-three dollars, went to refund the purchase money paid by the husband, and that the residue was afterwards repaid to him by her son, G. B. Laxton, by his care and support during his last years, and which she and her son considered more than sufficient to pay off and discharge that balance. She alleges that the cash payment was made by her by a cow belonging to her, and delivered to Perdew. She also relies strongly on the fact alleged, but not proven as alleged, that at the time of her alleged purchase a title bond was made by Perdew and delivered to her, which had been lost.

These defensive and affirmative matters defendant undertook to establish by the oral evidence of herself and of Perdew, Laxton, and I. F. Cook. The testimony of these witnesses in the main, and in so far as it affects materially the rights of the plaintiff, relates to personal transactions and communications with the deceased, Joseph Belcher. It shows or tends to show that Joseph Belcher did not, as the bill alleges, contract for and pay for this land, and have the title therefor conveyed to Cook, in trust for him, and tends to overthrow the case made by plaintiff for relief. It shows or tends to show that Cook held the legal title for Mrs. Belcher, and not for her husband Joseph Belcher or his heirs, and independently of this testimony relating to personal transactions and communications had with the deceased, her defense and claim for affirmative relief would fail wholly. Was this testimony competent? In our judgment it was not. Neither the plaintiff nor any of the heirs of the deceased were examined on their own behalf with reference to such personal transactions and communications, so as to let in and render competent the testimony of these witnesses under said section 23, chapter 130, Code 1906. By that section, "No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall

be examined," etc. This provision clearly cuts out the plaintiff; it cuts out Perdew, under whom, through Cook, she claims; it cuts out her son Laxton, for the evidence shows that the alleged title bond was not made, as alleged, by Perdew to Mrs. Belcher, but to her son, G. B. Laxton, and that if she has acquired any rights by virtue of that title bond, as to which her allegations and proof disagree, she would have to derive it by assignment or otherwise from him, and as it is conceded the original purchase of this land from Perdew was by Joseph Belcher, the testimony of Laxton, who and whose mother, admit as witnesses, that they consented that the title to this land, as requested by Belcher, should be invested in Cook, in trust, his testimony must necessarily also go out, by virtue of the statute.

Excluding the evidence of these witnesses relating to such personal transactions and communications with deceased, no evidence remains sufficient to establish the defense or showing ground for the affirmative relief prayed for. The evidence of I. F. Cook relates solely to the alleged title bond from Perdew to Laxton. It establishes nothing except the discovery of that bond by him and its delivery to Laxton.

Other questions raised and discussed in arguments and briefs of counsel become immaterial, and we need not further deal with them. Our conclusion is to reverse the decree below and remand the cause, with directions to the circuit court to enter a decree in favor of plaintiff, or plaintiff and others, which shall be in accordance with the principles enunciated herein, and further according to rules and principles governing courts of equity.

*Reversed and Remanded.*