ETTA C. HOLLAND, *et al.*

*v.*

FRANCES McCLAIN JOYCE, *et al.*

ETTA C. HOLLAND, *et al.*

*v.*

FRANCES McCLAIN JOYCE

FRANCES McCLAIN JOYCE, *et al.*

*v.*

JOHN W. McCLAIN, *et al.*

(No. 12859)

Submitted September 7, 1971. Decided December 14, 1971.

*Greene, Ketchum & Baker, Menis E. Ketchum,* for appellants.

*Herbert H. Henderson, Robert O. Ellis,* for appellees.

CALHOUN, JUDGE:

This case is before the Court on an appeal by Frances McClain Joyce and her husband, Harrison T. Joyce, from a judgment of the Circuit Court of Cabell County embodied in an order entered on December 27, 1968, in three civil actions which had been consolidated for consideration and decision in the trial court.

Parties to the three civil actions, with one exception, are the heirs at law of Mary E. McClain, who died intestate on June 27, 1959. Upon the death of Mary E. McClain, she was survived by the following sons and daughters: Etta C. Holland, James S. McClain, Frances McClain Joyce, Henry McClain, John W. McClain, Grace Lockett and William A. McClain. After the death of his mother, William A. McClain died intestate survived by two daughters, Kathleen Johnson and Willa Holman, as his sole heirs at law. Henry McClain died in 1962, survived by no widow or child.

The three civil actions, generally speaking, involve questions pertaining to a proper distribution of the assets of the estate of C. S. McClain, who died intestate in 1951, but more particularly the assets, real and personal, of the estate of his widow, Mary E. McClain.

C. S. McClain was the operator of the McClain Funeral Home in the City of Huntington. Upon his death intestate in 1951, he was survived by his widow, Mary E. McClain, and the children born to the marriage of this couple. There was no formal administration of his estate. In connection with the operation of the McClain Funeral Home, the husband and wife maintained and operated a cemetery known as the Bethel Memorial Park Cemetery. This cemetery property contained 10-1/8 acres of real estate and was owned by Mary E. McClain by reason of a deed of conveyance made to her in 1935. For the sake of convenience, we will refer hereinafter in this opinion to the two aspects of the business as the funeral home and as the cemetery.

Legal title to the real estate which is referred to in the record as the funeral home was in the name of Mary E. McClain. This real estate consisted of a ten-room dwelling located at 1644 Ninth Avenue in the City of Huntington; a nearby building known as the chapel; and a third building situated nearby which was known as the morgue, the upstairs of the same building having been used as a lodge hall.

During the latter years of the life of C. S. McClain, after his death intestate in 1951 and until the death of his widow, Mary E. McClain, in 1959, much of the work involved in the operation of the funeral home was performed by his children, primarily by Frances McClain Joyce, a daughter, and William A. McClain, a son. Checks representing obligations of the funeral home were signed by C. S. McClain during his lifetime. Apparently William A. McClain and Frances McClain Joyce were paid $50 each as a consequence of each funeral conducted by the funeral home prior to the death of their father.

After the death of C. S. McClain, the checking account for the funeral home business was placed in the name of his widow, Mary E. McClain, and she thereafter signed checks in payment of obligations of the funeral home.

Following the death of Mary E. McClain, the funeral home continued to be operated by members of the family, perhaps primarily by Frances McClain Joyce. For a period of time antedating the death of C. S. McClain and Mary E. McClain, their daughter, Frances McClain Joyce and her husband lived in a home which was a part of the cemetery property. In the meantime, the husband continued to teach school in Mingo County, and Frances McClain Joyce was employed from time to time in different positions of employment, which positions of employment were not related to the operation of the funeral home or the cemetery. Frances McClain Joyce lived with her husband in the home at the cemetery during weekends when he returned from Mingo County. Frances McClain Joyce lived primarily with her mother in the family home, which was a part of the funeral home business, when her husband was in Mingo County.

In 1962, the State Road Commission acquired by eminent domain proceedings a small portion of the cemetery real estate which resulted in a jury verdict in the Circuit Court of Cabell County in the amount of $18,256.69, including interest. In connection with the distribution of the recovery in the eminent domain proceedings, it became known to other heirs, apparently for the first time, that there was on record in the office of the Clerk of the County Court of Cabell County a deed by which ostensibly Mary E. McClain had previously conveyed to Frances McClain Joyce and Harrison T. Joyce, her husband, the eastern one-half of the 10-1/8 acres of cemetery property. Following a metes and bounds description of the eastern half of the cemetery property, the deed contained the following language: "The eastern half of above described property to include Care Takers Cottage, barn and garage."

The deed purported to have been executed by Mary E. McClain, as the grantor, on June 5, 1958, and to have been acknowledged by her on the same date before her son, John W. McClain, as a notary public. Nevertheless, a certificate of the Clerk of the County Court of Cabell

County, appearing on the deed, discloses that the deed was not admitted to record in his office until August 7, 1959.

On August 17, 1965, the Circuit Court of Cabell County entered an order providing for the distribution of the sum of $18,256.69, representing the amount of the award, pursuant to a jury verdict, for a portion of the cemetery property acquired in the eminent domain proceedings instituted by the State Road Commission. In the distribution of the fund, an award was made to Frances McClain Joyce and her husband in an amount which was predicated on the validity of the deed made by Mary E. McClain, as the grantor, to Frances McClain Joyce and her husband, as grantees. According to some or all the other heirs of Mary E. McClain, this constituted the first knowledge they had concerning the deed to Frances McClain Joyce and her husband, Harrison T. Joyce.

On November 10, 1965, at the instance of some of the heirs of Mary E. McClain, the Twentieth Street Bank of Huntington qualified as administrator of the estate of Mary E. McClain, deceased. The administrator made a settlement of its accounts before a commissioner of accounts. By an order entered on December 30, 1966, the County Court of Cabell County set aside the recorded settlement of the accounts of the administrator because of a controversy among the beneficiaries of the estate, particularly in relation to rights asserted by Frances McClain Joyce.

In October, 1966, Etta C. Holland and James S. McClain, as plaintiffs, instituted in the Circuit Court of Cabell County a civil action against Frances McClain Joyce, her husband, and other heirs of Mary E. McClain, as defendants, for the purpose of having an adjudication that the deed from Mary E. McClain to Frances McClain Joyce and her husband was invalid for various reasons alleged in the complaint. Subsequently an amended complaint was filed in the same civil action. The principal ground alleged in the amended complaint as a basis of

the invalidity of the deed was that it was never delivered by the grantor to the grantees or to either of them. On this ground, the trial court ultimately adjudged that the deed was invalid. By an order entered on October 11, 1967, the trial court held that the validity of the deed had not been in issue in the eminent domain proceedings and that, therefore, the question of the validity or the invalidity of the deed was not in any sense determined or adjudicated in the eminent domain proceedings.

On or about December 10, 1966, Etta C. Holland, John W. McClain, Kathleen Johnson and Willa Holman, as plaintiffs, instituted in the Circuit Court of Cabell County a civil action against Frances McClain Joyce, as the defendant. The plaintiffs alleged in their complaint in this action that, following the death of Mary E. McClain, her heirs entered into an agreement by the terms of which it was agreed that Frances McClain Joyce would continue the operation of the funeral home business and the cemetery as the agent and representative of all the heirs of Mary E. McClain; and that Frances McClain Joyce would receive $50 for each funeral as her compensation for managing and operating the funeral home and the cemetery. The plaintiffs, generally speaking, prayed that Frances McClain Joyce be required to make a full accounting to all the other heirs for profits earned from the operation of the funeral home and the cemetery and for recovery of monetary damages from Frances McClain Joyce because of her alleged unlawful conversion of assets of the estate of Mary E. McClain.

On or about May 16, 1968, Frances McClain Joyce and Harrison T. Joyce, her husband, as plaintiffs, instituted a civil action in the Common Pleas Court of Cabell County against John W. McClain and others as defendants for the purpose of having the court direct a partition or a sale of the real estate which belonged to Mary E. McClain upon her death intestate. The complaint alleged that, due to the nature, character and amount of the real estate, it was not susceptible of advantageous partition

in kind among the owners thereof and that the interests of the owners would be best promoted by a sale of the real estate and by a distribution among the owners of the proceeds of a sale.

By an order entered by the circuit court on June 18, 1968, the court, pursuant to R.C.P. 42(b), ordered the consolidation of the partition action with the two civil actions which were then pending in the circuit court. The consolidation order discloses that Frances McClain Joyce and Harrison T. Joyce, plaintiffs in the partition action, objected and excepted to the action of the circuit court in ordering the consolidation of the three actions. We are of the opinion that the trial court properly exercised its discretion and did not err in its action in consolidating the three civil actions. The three actions involved the same transaction or occurrence to the extent that all involved the single issue of the proper distribution of the assets of the estate of Mary E. McClain, deceased, among her heirs. R.C.P. 42 makes no substantial change in preexisting legal principles relating to consolidation of related suits or actions. *State ex rel. Bank of Ripley* v. *Thompson,* 149 W.Va. 183, 139 S.E.2d 267; *Montgomery* v. *Fay,* 139 W.Va. 273, 282, 80 S.E.2d 103, 108; *Castle* v. *Castle,* 69 W.Va. 400, pt. 1 syl., 71 S.E. 385.

On October 3, 1968, the parties appeared before the circuit court in person and by counsel and commenced a trial of the three consolidated actions by the court in lieu of a jury. Frances McClain Joyce was the first witness to testify at the trial. She was called as an adverse party, pursuant to R.C.P. 43(b). The initial questions were propounded to her by Robert O. Ellis, one of the counsel for Etta C. Holland and James S. McClain who were plaintiffs in the civil action in which they challenged the validity of the deed from Mary E. McClain, as the grantor, to Frances McClain Joyce and Harrison T. Joyce, as the grantees. Mrs. Joyce testified that she sold lots in the westerly half of the cemetery after the death of her mother; that, during the life of her father, he paid his son, William A. McClain, $50 for each funeral as

compensation for his services in connection with the operation of the business; that she, Mrs. Joyce, prepared the deed in question by typing necessary additions to a blank form of a deed which she had obtained; that she made the necessary insertions in the blank form of a deed by use of a typewriter at the West Virginia Home for the Aged, at which place she was then employed; that thereafter she took the deed to her mother; and that Dr. Simpson A. Smith "was a witness to the deed."

Mrs. Joyce was interrogated by Attorney Ellis concerning a discovery deposition she had made at his office on December 31, 1966, relative to the circumstances under which she obtained possession of the deed after her mother's death. Questions and answers were read to her by Attorney Ellis, and the witness was then asked whether these questions were propounded to her and whether she made the answers which were thus read to her in the course of the taking of her discovery deposition. Her answers to these questions, generally speaking, were in the affirmative. All the interrogation of this character was objected to by counsel for the witness. The primary objection appears to have been that the testimony thus elicited from the witness violated the provisions of Code, 57-3-1, as amended, which is sometimes referred to as the Dead Man's Statute.

Counsel for the appellants also assert that the trial court improperly permitted counsel for the plaintiffs to read into the record selected portions of the discovery deposition of Frances McClain Joyce while she was testifying as an adverse party at the trial. This contention is without merit. In that connection, counsel for the plaintiffs merely gave the witness an opportunity to admit or to deny that, in the taking of her discovery deposition, she was asked certain questions and that she made certain answers to the questions thus propounded to her. While testifying as a witness at the trial, she admitted that these questions and answers were, in fact, a part of her discovery deposition.

We do not agree with the contention of counsel for the appellants that Frances McClain Joyce, while testifying as an adverse party at the trial, was required to give certain testimony in violation of the provisions of Code, 1931, 57-3-1, as amended, which is sometimes referred to as the Dead Man's Statute. The testimony thus elicited from the witness related to facts and circumstances involving the alleged preparation, execution and delivery of the deed in accordance with the contention of Frances McClain Joyce. In this respect, she was giving testimony in her own behalf and for her own benefit. The plaintiffs waived their right to object to such testimony by calling her as a witness in their own behalf. *Ogdin* v. *The First National Bank of St. Marys,* 103 W.Va. 665, 672, 138 S.E. 376, 379. In the circumstances, she was permitted, without objection, to give testimony concerning communications which she had with Mary E. McClain. To the extent that counsel for the plaintiffs elicited testimony from her which tended to show nondelivery of the deed, the witness was giving testimony against her own interests. It is well settled that a party may give testimony against his or her own interest without violating the statute in question. *Bailey* v. *Bee,* 73 W.Va. 286, pt. 4 syl., 80 S.E. 454; *Jackson* v. *Cook,* 71 W.Va. 210, pt. 3 syl., 76 S.E. 443; *Crothers' Adm'r* v. *Crothers,* 40 W.Va. 169, pt. 3 syl., 20 S.E. 927.

The substance of the answers made by Frances McClain Joyce during the taking of her testimony was that, about two weeks after her mother's death, she found the deed inside a pocketbook which belonged to the witness; that the pocketbook was inside her mother's trunk in which her mother kept papers and other personal possessions; that the trunk was in her mother's closet which was a part of her mother's bedroom; and that there was nothing to prevent the mother from taking the pocketbook "out of the trunk" or from taking the deed out of the pocketbook. Mrs. Joyce testified, over objection of her counsel, that her mother had complete possession and control of the trunk and its contents until she died; that she, the

witness, never accepted the deed, apparently referring to acceptance of a manual delivery of the deed to her by her mother; that her mother signed the deed, apparently in the presence of Mrs. Joyce and of Dr. Simpson A. Smith, who was deceased at the time of the trial; and that she, the witness, never had the deed in her hands after her mother signed it until she discovered the deed in her mother's trunk approximately two weeks after her mother's death.

We are of the opinion that the trial court correctly held that there was no valid delivery of the deed from Mary E. McClain, the grantor, to Frances McClain Joyce or to her husband, Harrison T. Joyce. The evidence is clear that there was no formal or manual delivery of the deed at any time. It is undisputed that Frances McClain Joyce did not even see the deed from the date her mother signed it until it was found among Mary E. McClain's personal papers and other possessions in her trunk approximately two weeks after her death. *French* v. *Dillon*, 120 W.Va. 268, 197 S.E. 725; *Downs* v. *Downs*, 89 W.Va. 155, 108 S.E. 875; *Foreman* v. *Roush*, 87 W.Va. 341, 105 S.E. 157; *Garrett* v. *Goff*, 61 W.Va. 221, 56 S.E. 351; *Gaines* v. *Keener*, 48 W.Va. 56, 35 S.E. 856; *Lang* v. *Smith*, 37 W.Va. 726, 17 S.E. 213.

The trial court held that, following the death of Mary E. McClain, the funeral home was operated by Frances McClain Joyce as agent for all the heirs pursuant to an agreement made by all the heirs of Mary E. McClain, under the terms of which agreement Frances McClain Joyce was to be paid at the rate of $50 for each funeral. From an audit of the business of the funeral home made by a certified public accountant, who was designated by the trial court for that purpose, the trial court found that, while acting as agent in the operation of the funeral home, Frances McClain Joyce conducted 384 funerals. Counsel for the appellants assert that the trial court's finding that the agreement made by the heirs was based wholly on hearsay testimony. We are of the opinion that

the fact of the oral agreement among the heirs was based on testimony which was legally admissible and proper. Etta C. Holland, one of the daughters of Mary E. McClain, testified from her own personal knowledge, concerning the making of the oral agreement.

We have carefully considered other assignments of error made in behalf of the appellants. We are of the opinion that such additional assignments of error are without merit and that, accordingly, the judgment of the trial court embodied in its order entered on December 27, 1968, is affirmed, subject to the qualifications hereinafter expressed in this opinion.

In relation to the distribution of the assets of the estate of Mary E. McClain, the trial court held that Frances McClain Joyce and Harrison T. Joyce received $7,061.87 in excess of the amount received by the other heirs of Mary E. McClain as a result of the distribution of the proceeds from the eminent domain proceedings, and the court ordered that Frances McClain Joyce and Harrison T. Joyce pay to Etta C. Holland, James S. McClain, John W. McClain and Grace Lockett each the sum of $1,176.97 and to pay to Willa Holman and Kathleen Johnson the sum of $1,176.97.

The record discloses that Frances McClain Joyce paid the Twentieth Street Bank of Huntington, the administrator of the estate of Mary E. McClain, the sum of $6,315.66, which sum represented the appraised value of the equipment and the other personal assets of the funeral home business which the administrator apparently allowed her to purchase at the appraised value.

Inasmuch as the trial court found that the question of the validity of the deed was not determined in the eminent domain proceedings of June, 1962, the question has arisen on this appeal whether the distribution of the proceeds of the award made in the eminent domain proceedings, which was based upon the validity of the deed from Mary E. McClain to Frances McClain Joyce and

Harrison T. Joyce, was determined in that proceeding and became res judicata. If the doctrine of res judicata applies, the judgment in favor of the heirs for $1,176.97 each against Frances McClain Joyce and Harrison T. Joyce would be erroneous. Accordingly, in order to determine the questions of res judicata and the right of the heirs to the judgments for $1,176.97 each against Frances McClain Joyce and Harrison T. Joyce, these judgments in favor of the heirs are reversed and set aside with directions that, upon the remand of this case, those questions be determined by the trial court in order that the credits to which Frances McClain Joyce is entitled, if any, may be finally determined in the accounting between her and the other heirs of Mary E. McClain.

The question of the right of Frances McClain Joyce to a credit for the sum of $6,315.66 paid by Frances McClain Joyce to the estate of Mary E. McClain and distributed to her heirs other than Frances McClain Joyce should also be determined upon the remand. The payment of that amount was made by Frances McClain Joyce on the theory that Mary E. McClain was the sole owner of the property purchased by Frances McClain Joyce when in fact her sole ownership of such property was not established by the evidence, and in the absence of such evidence, Mary E. McClain, as the widow of C. S. McClain, the original owner of the property, would be the owner of only one-third of the personal property, and the heirs of C. S. McClain, including Frances McClain Joyce, would own the other two-thirds of the property. If such was the actual ownership of the property, Frances McClain Joyce would be entitled to a credit for her share of the $6,315.66 in the final settlement between her and the heirs of Mary E. McClain and that question should be determined upon the remand.

For reasons stated in this opinion, the judgment of the Circuit Court of Cabell County is affirmed in part, reversed in part and the case is remanded to the trial court for such further proceedings as may be proper and

consistent with the views of the Court as expressed in this opinion.

*Affirmed in part; reversed in part; remanded with directions.*